## UNITED STATES *v.* McCONNELL (No. 2).[1]

FIGURED COTTONS WITH CORD ORNAMENTATION.

The merchandise was a cotton cloth, commonly called striped or madras shirting, so woven that ordinary warp threads are grouped together and covered with another longer warp thread on the face of the fabric and presenting a raised rounded appearance, forming thereby, in effect only, a so-called Russian cord. Irrespective of what it resembles, this cloth is not dutiable under paragraph 323, tariff act of 1909, imposing a cumulative duty, but under paragraph 320 of that act, in connection with paragraph 318.

United States Court of Customs Appeals, November 30, 1910.

APPEAL from a decision of the Board of United States General Appraisers, G. A. 7000 (T. D. 30467).

[Affirmed.]

*D. Frank Lloyd,* Assistant Attorney General (*Thomas J. Doherty* on the brief), for the United States.

*Brooks & Brooks* (*Frederick W. Brooks, jr.,* on the brief) for appellees.

Before MONTGOMERY, HUNT, SMITH, and BARBER, Judges.

BARBER, Judge, delivered the opinion of the court:

The importation is cotton cloth, commonly called striped or madras shirting.

Upon the two samples before us there are various stripes at uniform distances from each other and of a color different from the groundwork of the fabric. Each of these stripes is composed wholly or in part of what is called a Russian cord. On one of the two samples some of these Russian cords are of the same color as the main body of the cloth.

---

[1] Reported in T. D. 31104 (19 Treas. Dec., 1211).

This so-called Russian cord upon the goods before us is produced in weaving by grouping several, in some instances eight, regular warp threads in one reed and in the weaving treating them substantially as one thread. They are woven in connection with another longer warp thread of the same color called a leno thread and in such a manner that the leno thread passes from side to side of the grouped threads on the face of the cloth only, interweaving alternately with the weft threads on either side of the grouped threads in such a manner that the weft threads do not pass in front of the grouped threads. This results that these grouped warp threads and the leno thread when the weaving is completed present a rounded raised appearance, resembling a cord, upon the face of the fabric.

By this operation the weft threads all remain underneath or back of the grouped threads, and the color of the weft threads therefore does not show on the face of the cloth at this point. The leno thread shows on the back of or underneath the fabric, but the cord effect does not appear there.

It is apparent that the Russian cord is not a cord in fact, but merely a cord effect, and there is no question made but that one of its purposes is to give the goods a fancy or figure effect.

These cord effects extend the whole length of the web, and when woven there are no loose or floating threads to be trimmed off as is usually the case when lappets, dots, or swisses are made upon the fabrics in the process of weaving.

The merchandise in question was assessed for duty under the countable provisions of paragraph 318 of the tariff act of August 5, 1909, and an additional duty of 2 cents per square yard was assessed under paragraph 323 of the same act. To the imposition of this additional duty the importers protested; the Board of General Appraisers sustained the protest and, on petition of the collector of the port of New York, allowed a rehearing during which additional evidence was taken by the Government. At its conclusion the board adhered to its original decision and the case is brought here for review.

The material portions of paragraph 323 are as follows:

In addition to the duty or duties imposed upon cotton cloth by the various provisions of this section, there shall be paid the following cumulative duties, * * *. On all cotton cloth in which other than the ordinary warp and filling threads are used to form a figure or fancy effect, whether known as lappets or otherwise. * * *

This statute, in substance, appears to have been first enacted in paragraph 313 of the tariff act of July, 1897, in the following language:

Cotton cloth, in which other than the ordinary warp and filling threads have been introduced in the process of weaving to form a figure, whether known as lappets or otherwise, * * *.

So far as applicable to the importations in question, we think that section 323 of the tariff act of 1909 did not change the law as enacted in paragraph 313 of the tariff act of 1897.

The importers claim that the provisions of paragraph 320 of the tariff act of 1909, which is as follows:

The term cotton cloth, or cloth, wherever used in the paragraphs of this schedule, unless otherwise specially provided for, shall be held to include all woven fabrics of cotton in the piece or cut in lengths, whether figured, fancy, or plain, the warp and filling threads of which can be counted by unraveling or other practical means, * * *

in connection with the provisions of what may be called the countable paragraph, 318 of the act, furnish the rules for the assessment of duty, and that paragraph 323 is inapplicable.

The question, therefore, is whether this madras shirting is a figured or fancy cloth which is not embraced in paragraph 320 because otherwise specially provided for in paragraph 323. That it is fancy or figured cloth is not questioned, and it is not claimed to be lappets. Is it cloth in which other than the ordinary warp or filling threads are used to form a figure or fancy effect?

Both sides rely amongst other things upon the authority of H. B. Claflin Co. v. United States (109 Fed. Rep., 562) and Mills et al. v. United States (109 Fed. Rep., 564), which were affirmed in the Circuit Court of Appeals for the Second Circuit in 114 Fed. Rep., at pages 259 and 257, respectively, to support their contention. In each of these cases the merchandise was by the courts held dutiable under paragraph 313 of the tariff act of 1897.

In the Claflin case the madras goods, which were the only ones at all similar to the importations before us, were ornamented with dots or figures woven by independent weft or filling threads introduced in weaving for the purpose, portions of which were afterwards cut away.

In the Mills case the goods were described as lenos. By referring to the decision of the Board of General Appraisers (T. D. 22604) it will be found that out of 17 exhibits each piece, with one exception which will be herein later referred to, was so woven that the ornamentations giving the figure or fancy effect were either lappets or figures or designs produced by the introduction of threads loosely attached to the groundwork of the fabric, in some instances leaving threads to be cut off and some not; in no case, as we understand the decision of the board, save the exception above mentioned, do these threads become a part of the groundwork of the woven fabric; and the board found as a fact that they were introduced primarily for the purposes of ornamentation.

With reference to the exception above referred to, it appears from the decision of the board that this cloth was of white groundwork,

checked with pink warp and filling threads, so manipulated in the weaving as to be thrown mostly upon the surface of the fabric, and that these threads extend the entire length or width, as the case may be, of the web and were not clipped off.

The Board of General Appraisers sustained the protest as to this sample and held that it was not liable to the cumulative duty provided under paragraph 313 of the tariff act of 1897, because such pink threads "occupy the place of regular warp and filling threads, are not additional thereto, and the fabric would not be perfect if they had not been put in."

The importers appealed from the decision of the board so far as it related to the other samples, but the Government did not appeal from that part of it sustaining the protest.

As we understand the decisions of the courts in the cases referred to, considered in the light of the facts before them, although there are isolated remarks that may seem to sustain the contention of both sides before us, they are to the effect that where ornamentations resulting in figure or fancy effects are produced by lappets, dots, or swisses, superimposed by weaving upon the groundwork of the fabric, or where such figures or fancy effects are produced by means of threads introduced in the process of weaving solely for such purpose and designed to be either clipped off or left loose upon the fabric itself, such ornamentation brings the cloth within the provisions of paragraph 313 of the tariff act of 1897; but when thread or threads introduced in or during the process of weaving enter into the structural formation of the goods, although one of the purposes served by them is to produce an ornamental appearance, such threads are not other than ordinary warp or weft threads within the meaning of the paragraph.

It is claimed by the appellant, and some evidence taken before the Board of General Appraisers tends to show, that these warp threads bound together by the leno thread may all but one be removed from the fabric and still the corded effect retained and that all such threads and the leno thread can be removed without impairing the integrity of the cloth itself. While this process of dissection may be of some aid in determining the part which each thread plays in the construction of the fabric, yet it is not conclusive upon the question as to the purpose of the introduction of any thread in weaving, and we do not agree with the Government's contention that this leno thread and the other warp threads it helps hold together can be removed without materially impairing the integrity of the cloth.

It is obvious, and an inspection of the samples clearly shows, that such removal leaves relatively large-sized unfilled spaces in the fabric,

and, we think, materially injures the same not only in its appearance, but also in its integrity.

What is an ordinary warp or filling thread in any fabric must necessarily depend upon the facts that appear with reference thereto. A thread or threads may undoubtedly be introduced in the process of weaving in such a manner that although they produce a figure or fancy effect they are, nevertheless, ordinary warp or filling threads in the manufacture of that particular piece of goods.

Under paragraph 320 of the tariff act of 1909 the importer has a right to bring in free of cumulative duty figured or fancy cotton cloth if the figure or fancy effect is produced by the ordinary warp or filling threads so that the existence of a figure or fancy effect in the cloth is not conclusive; the test being, Is it produced by other than the ordinary warp or filling threads?

In the case before us the leno thread extends the entire length of the web and it is closely woven into the same. One of its purposes is to produce a corded figure or fancy effect. We think that this thread of itself is an ordinary warp thread used in the weaving of goods manufactured as these samples are. It also aids to produce the solid color effect of the cord and contributes largely to the part the other grouped warp threads play in producing the same effect; they are held in place by it and each and both are integral parts of the fabric when completed and neither can be removed without affecting its integrity. It is true that one of the grouped threads may be removed with no great detrimental effect upon the fabric; so, perhaps, may any isolated warp thread, but, nevertheless, it holds true that the removal of any one of the bases upon which a fabric is constructed affects to a greater or less extent its structural integrity; and the bases composing a woven fabric necessarily must be its warp and weft threads.

This case is vastly different, as we view it, from those where the figure or fancy effect is produced by weaving upon the face of the fabric, with independent threads, figures other and different from those produced by any manipulation of the regular warp or weft threads which enter into the structure of the fabric. Manifestly, these last are within paragraph 323.

To the argument that these ornamentations are very similar to those which are known as lappets and that it is therefore clear that the legislative intent must have been that they should pay the same duty, it may be said that the statute does not make that the test. The question is not what they resemble, but how they are produced; and it must appear they are produced by other than the ordinary warp or weft threads to bring them within the paragraph. If Con-

gress intended to impose the cumulative duty upon the effect, regardless of how produced, it failed to use language susceptible of that interpretation. We must apply the law as it is written, and the relief, if any is needed, should be sought from the legislature and not the judiciary.

It appears that early in 1900 the Board of General Appraisers in considering the protests of Wright & Graham (T. D. 21940) passed upon the question of whether madras shirtings, which it is claimed are very like in the process of manufacture to the merchandise before us, held that such goods were not within the provisions of paragraph 313. It appears from the decision of the board that in that case there were two warp threads so manipulated as to produce a cord effect similar to the cord effect upon the importations in this case, although it does not appear, as we understand the decision of the board, that the leno thread was used in the weaving to produce such an effect.

This decision was not appealed from by the Government, and by its letter under date of January 25, 1900, the Treasury Department notified the collector of the port of New York that no appeal would be taken therefrom and directed him to conform to the opinion of the board in assessing merchandise of the character covered by its decision in the Wright & Graham case.

The importers, therefore, urge as a further ground for affirming the decision of the board in this case, and this view evidently obtained with the board, that the well-established principle that a long-continued practice in construing the provisions of law by either the executive or judicial departments of the Government is entitled to great weight in interpreting a statute, and that where, as in this case, the provisions of a previous law have been subsequently reenacted in a subsequent act, the Congress is presumed to have adopted the construction then already placed upon the previous law by such departments, and that it is now too late for the Government to ask and would be unjust for it to obtain such a construction of the act in question as it now asks for.

Many cases are cited in support of this proposition, the latest being Komada & Co. *v.* United States (215 U. S., 392).

We recognize the force of this contention, but in view of our conclusion upon the other feature of the case, as already indicated, do not find it necessary to consider at length this point.

The decision of the Board of General Appraisers is affirmed.

DE VRIES, Judge, having heard the case below, did not participate in its determination here.